## IN THE UNITED STATES DISTRICT COURT
## FOR THE CENTRAL DISTRICT OF ILLINOIS, PEORIA DIVISION

| | | |
|---|---|---|
| LOLA CAMP, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | 04-CV-1358 |
| | ) | |
| TNT LOGISTICS CORPORATION | ) | |
| and TRELLEBORG YSH, INC., | ) | |
| | ) | |
| Defendants. | ) | |
| _____ | ) | |
| | ) | |
| TNT LOGISTICS NORTH AMERICA, INC, | ) | |
| | ) | |
| Third-Party Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| DeKEYSER EXPRESS INC., and | ) | |
| TRANSPORT LEASING CONTRACT, INC., | ) | |
| | ) | |
| Third-Party Defendants. | ) | |
| _____ | ) | |
| | ) | |
| TRELLEBORG YSH, INC., | ) | |
| | ) | |
| Third Party Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| DeKEYSER EXPRESS, INC., and | ) | |
| TRANSPORT LEASING/CONTRACT, INC. | ) | |
| | ) | |
| Third Party Defendants. | ) | |

## REPORT AND RECOMMENDATION

BYRON G. CUDMORE, U.S. MAGISTRATE JUDGE:

This case is before the Court for a Report and Recommendation on Third Party Defendant DeKeyser Express, Inc.'s motion to dismiss the breach of contract claims against it, on the grounds that those claims are subject to arbitration (d/e 39).  For the reasons below, the Court agrees that the claims are subject to arbitration, and therefore recommends their dismissal.  However, the Court recommends dismissal based on lack of venue pursuant to Fed. R. Civ. P. 12(b)(3), rather than lack of jurisdiction pursuant to Fed. R. Civ. P. 12(b)(1).

## STANDARD OF REVIEW

For the reasons set forth below, the Court recommends dismissal based on Fed. R. Civ. P. 12(b)(3), improper venue, not lack of subject matter jurisdiction.  However, the inquiry is the same under either analysis: are TNT and Trelleborg's breach of contract claims subject to arbitration? To determine a correct answer, the Court takes TNT and Trelleborg's factual allegations as true, drawing inferences in their favor, and looks to the provisions of the Master Agreement cited by the parties.  See Villasenor v. Industrial Wire & Cable Co., 929 F. Supp. 310, 311 (N.D. Ill.

1996)(discussing standards of review under 12(b)(1); *see also* <u>Latino Food Marketers, LLC v. Ole Mexican Foods, Inc.</u>, 2003 WL 23220142 (W.D. Wis. 2003)(discussing standard of review under 12(b)(3))(not published in F.Supp.2d).

The Court notes that consideration of the provisions of the Master Agreement cited by the parties is proper on the motion to dismiss, regardless of whether that motion is construed under Fed. R. Civ. P. 12(b)(3), 12(b)(1) or 9 U.S.C. § 3 and/or § 4.  *See* <u>Continental Casualty Co.</u>, 417 F.3d 727, 731 n.2 733 (7th Cir. 2005) ("Documents that a defendant attaches to a motion to dismiss are considered part of the pleadings if they are referred to in the plaintiff's complaint and are central to the claim.").  The Master Agreement is central to the third party contract claims and is quoted and referred to in both Third Party Amended Complaints, as well as the briefs of TNT and Trelleborg.  (d/e 42, p.3; d/e 43, p.4; d/e 49, ¶¶ 6, 8; d/e 50, ¶¶ 22, 31; d/e 55, p. 10).

**BACKGROUND**

The factual background is taken from Plaintiff's Complaint (d/e 1) and the Amended Third Party Complaints (d/e's 49, 50), setting forth the

allegations as true and drawing all reasonable inferences in the non-movants' favor, for purposes of this order.

Plaintiff drives a semi-tractor/trailer. On January 22, 2003, she picked up a load of auto parts from Defendant Trelleborg YSH, Inc. ("Trelleborg") for delivery to a Mitsubishi auto plant in Normal, Illinois. Defendant Trelleborg loaded on Plaintiff's truck the auto parts, which were secured on pallets called "cubes," but one cube did not fit securely and was put on top of the other cubes.

Plaintiff refused to drive the load because it was improperly secured–in Plaintiff's words, the load "'would not ride.'" (Complaint, d/e 1, ¶ 10). Defendant TNT Logistics North America, Inc. ("TNT"), a company that handles shipping logistics, was notified that the load would not ride, but insisted that the parts be shipped immediately. Defendant TNT allegedly faxed a statement to Plaintiff and Defendant Trelleborg releasing them from liability for transporting the improperly secured load.

Plaintiff then drove the load to its destination in Normal, Illinois. As she opened the rear doors, the unsecured cube began to fall; she slammed the door upward to keep the cube from falling on her. As a result, she

suffered injury to her neck, right arm and shoulder that ultimately required surgery.

On or about August 31, 2004, Plaintiff filed her negligence case against Defendants TNT and Trelleborg in McLean County Circuit Court, Illinois, alleging various negligent acts by the defendants in the scheduling, staffing, and allowing of unsecure loading and transportation of goods. Defendant TNT removed the case to federal court based on diversity jurisdiction.

After removal, Defendants TNT and Trelleborg filed third party complaints against DeKeyser Express, Inc. ("DeKeyser"), and added Transport Leasing/Contract, Inc., as another third party defendant in amended third party complaints filed on June 23, 2005.   Transport Leasing/Contract, Inc., employed Plaintiff, and it was through that employment that Plaintiff was providing services for DeKeyser on the day of her injury.[1]  (d/e 49, ¶ 4; d/e 50, ¶ 12).

Defendants TNT and Trelleborg assert the following third party claims against DeKeyser: 1) contributory negligence for failing to properly train and

---

[1] Transport Leasing/Contract, Inc., filed its Answers on November 4, 2005.

supervise Plaintiff; 2) breach of contract for failing to indemnify, defend and hold harmless pursuant to an agreement between DeKeyser and TNT; and 3) breach of contract for failing to procure insurance as required by that agreement.  (d/e 49, ¶¶ 6, 8; d/e 50, ¶¶ 22, 31).

It is the breach of contract claims against DeKeyser that are at issue here.  They are based on a "Master Agreement for Transportation Services" (the "Master Agreement") between TNT's predecessor and DeKeyser. DeKeyser moves to dismiss the claims on the ground that the Master Agreement requires those claims to be arbitrated in Jacksonville, Florida.[2]

## THE MASTER AGREEMENT

TNT and Trelleborg base their breach of contract claims on the following provisions in the Master Agreement:[3]

7. Insurance

7.1 Carrier [DeKeyser] shall maintain at its own expense, during the term of this Master agreement and any outstanding Work Order at least the forms and amounts of insurance set forth below:

\*          \*          \*

---

[2] DeKeyser's original motion to dismiss was revived on July 12, 2005, as to the amended third party complaints.

[3] The bracketed text is not in the Master Agreement, but is taken verbatim from TNT and Trelleborg's Amended Third Party Complaints.  The Court retains the bracketed material to help clarify the parties' roles.

(d) Commercial general liability insurance, including contractual liability, with a combined single limit of at least $1,000,000 for each occurrence.

(e) Excess liability insurance in the amount of $2,000,000 per occurrence to cover claims covered by commercial general liability . . . that extends above the liability levels set forth above.
. . . . . . . .

Insurance policies described in Sections 7 (d) and (e) shall name CTI [TNT Logistics] and the pertinent Shipper [Trelleborg] as an additional insured in accordance with the indemnification provision contained in this Agreement.

(d/e 49, ¶ 8; d/e 50, ¶ 31; d/e 52, Ex. C., ¶ 7.1).

8. Indemnification

8.1 Carrier Indemnification. …Carrier [DeKeyser] shall be responsible for and shall indemnify and save harmless CTI [TNT Logistics], Shipper [Trelleborg], and their directors, officers, agents, and employees against any and all loss, claim, or damage, including reasonable attorneys' fees and court costs to the extent arising out of, or resulting from:

(a) The negligent or intentional acts or omissions of Carrier [DeKeyser], its employees, agents, contractors, or subcontractors, or any damage or injury associated with, related to or arising out of Carrier's [DeKeyser's] activities hereunder and/or the operation of any tractors, trailers or other vehicles or the conduct of any of its crews, drivers, employees or agents;

(b) Carrier [DeKeyser] or any of its officers, employees or agents failure to comply with any applicable federal, state and local laws, regulations or orders;

(c) Breach of any obligation of Carrier [DeKeyser] contained in this Master Agreement or the pertinent Work Order;

> (d) Any claim for personal injury of Carrier's employees [Lola Camp] related directly or indirectly to the provision of Services hereunder including but not limited to worker's compensation benefits, or in the event of death, by such employee's personal representatives.

(d/e 49, ¶ 6; d/e 50, ¶ 22; d/e 52, Ex. C., ¶ 8.1).

DeKeyser bases its motion to dismiss on the following arbitration clause in the Master Agreement:

> In the event any dispute or claim arises out of or relating to this Agreement, the parties shall promptly confer in good faith to resolve such dispute or claim. If the dispute or claim is not resolved within thirty (30) days after it arises, the dispute or claim shall be settled by arbitration in accordance with the Federal Arbitration Act (or if not applicable, the applicable state law) administered by the American Arbitration Association in accordance with its Commercial Arbitration Rules, and judgment on the award rendered by the arbitrator(s) may be entered in any court having jurisdiction thereof. Either party may apply to thearbitrator seeking injunctive relief until the arbitration award is rendered or the controversy is otherwise resolved. Either party also may, without waiving any remedy under this Agreement, seek from any court having jurisdiction any interim or provisional relief that is necessary to protect the rights or property of that party, pending the establishment of the arbitral tribunal or pending the arbitral tribunal's determination of the merits of the controversy. The place of arbitration shall be in Jacksonville, Florida and this Agreement shall be governed by the laws of the State of Florida. The arbitrator(s) shall have no power to modify any of the provisions of this Agreement, and their jurisdiction is limited accordingly.

(d/e 39, Ex. C, ¶ 16.7; d/e 55, p.10; d/e 43, p.4; d/e 42 p.3).

## ANALYSIS

### I. CHOICE OF LAW

The parties agree that the Federal Arbitration Act applies. (d/e 43 p.3; d/e 55 pp. 4-5; d/e 60 p.5). The Federal Arbitration Act favors arbitration to the extent that doubts about whether parties agreed to arbitrate are resolved in favor of arbitration. Continental Casualty Co. V. American Nat'l Ins. Co., 417 F.3d 727, 731 (7th Cir. 2005)(*quoting* Moses H. Cone Mem'l Hosp. v. Mercury Const. Corp., 460 U.S. 1 (1983)). "Whether the parties have agreed to arbitrate is a question normally answered by the court rather than by an arbitrator. The issue is governed by state law principles governing contract formation." Id., 417 F.3d at 730 (citations omitted); *accord* Employers Inc. of Wausau, 251 F.3d 1316, 1323 (11th Cir. 2001)("Federal law establishes the enforceability of arbitration agreements, while state law governs the interpretation and formation of such agreements").

DeKeyser argues that Illinois law governs "in evaluating the arbitration clause of the Master Agreement . . ." (d/e 47, p. 9). TNT and Trelleborg counter that either federal and/or Florida law applies because of the Master Agreement's choice of law clause.

The Court agrees with the latter position: the choice of law provision in the Master Agreement requires the application of Florida contract law to determine the reach of the arbitration clause. *See, e.g.,* Stone v. Doerge, 328 F.3d 343, 345 (7th Cir. 2003)(arbitrability determined by general rules of New York contract law, where contract pointed to New York law); Ross Bros. Construction Co., Inc., v. Int'l Steel, 283 F.3d 867, 874 (7th Cir. 2002)(arbitration clause must be interpreted according to choice of law provision). The cases DeKeyser cites do not deal with choice of law provisions in contracts. *See, e.g.,* Jupiter Aluminum Corp. v. Home Ins. Co., 225 F.3d 868, 872 (7th Cir.2000)(insurance policy did not contain choice of law provision).[4]

## II.   "ARISES OUT OF" LANGUAGE IN MASTER AGREEMENT

TNT and Trelleborg advance that their breach of contract claims do not "arise out of or relate to" the Master Agreement, and are therefore not subject to arbitration. They characterize their contract claims as originating from Plaintiff's personal injury tort claim, not the Master Agreement: "[d]espite the legal title of the claims, the 'origin or genesis' of TNT's claims

---

[4] The choice of law debate appears inconsequential, at least as to the question of whether the contract claims "arise out of" the Agreement and are therefore arbitrable. Under either Florida or Illinois contract law, the answer is yes, according to the Court's research.

is [Plaintiff's] alleged tort injury, not breach of the Agreement." (d/e 43, p.6).[5]

No law is cited for this argument, nor does the argument carry any persuasive force of its own. Trelleborg and TNT's claims are classic breach of contract claims, in label and substance. Both Trelleborg and TNT title their claims as breach of contract claims, cite specific provisions in the Master Agreement, and allege DeKeyser breached the Agreement by failing to perform its contractual obligations. (d/e 49, Counts II & III; d/e 50, Counts III & IV). Trelleborg even alleges that "[t]he injuries and damages for which the plaintiff . . . seeks recovery in this cause arose out of, resulted from, and are directly related to the provision of services under the aforesaid contract between DeKEYSER and TNT." (d/e 49, Counts II & III, ¶ 7). In short, breach of contract claims must necessarily "arise from" the contract on which they are based. DeKeyser's duty to indemnify or insure arises from the Master Agreement–without that Agreement no duty would exist and consequently no claim. The breach of contract claims do not arise from the Plaintiff's injuries; they arise from DeKeyser's alleged breach of its contractual obligations. See Telecom Italia SpA v. Wholesale Telecom

---

[5] Trelleborg has adopted TNT's argument (d/e 42, p.7).

Corp., 248 F.3d 1109, 1116 (11th Cir. 2001)("where the dispute occurs as a fairly direct result of the performance of contractual duties . . . [as in] the intentional failure to perform the contract . . .then the dispute can fairly be said to arise out of or relate to the contract in question, and arbitration is required); Sweet Dreams Unlimited, Inc. v. Dail-A-Mattress International, LTD, 1 F.3d 639, 643 (7th Cir. 1993)(claim seeking to cancel agreement subject to arbitration because claim was a result of and had its origins in the agreement). The Court accordingly concludes that the breach of contract claims are subject to arbitration under the Master Agreement.

### III.  TRELLEBORG

Trelleborg argues that it cannot be forced to arbitrate because it is not a signatory to the Master Agreement.

It is true that arbitration cannot be compelled in the absence of an agreement to arbitrate. Grundstad v. Ritt, 106 F.3d 201 (7th Cir. 1997)(stating general rule that guarantor who is not signatory to contract with arbitration clause is not bound thereby); Sweet Dreams, 1 F.3d at 641 ("we will not compel parties to arbitrate disputes unless they have agreed to do so").

However, nonsignatories are bound to arbitrate if they are third-party beneficiaries of a contract. Zurich American Ins. Co. v. Watts Indus., Inc., 417 F.3d 682, 689 (7th Cir. 2005)("A nonsignatory party is estopped from avoiding arbitration if it knowingly seeks the benefits of the contract containing the arbitration clause."); Continental, 417 F.3d at 734 (applying Illinois law); Morgan Stanley DW Inc. V. Halliday, 873 So.2d 400 (Fla. 4th DCA 2004)(nonsignatory bound to arbitrate if intended third-party beneficiary of contract and receives direct benefits from the contract); Terminix Int'l Co., LP v. Ponzio, 693 So.2d 104 (Fla. 5th Dist. 1997) (nonsignatories asserting third party beneficiary status bound by arbitration clause in contract); Dannewitz v. Equicredit Corp of America, 333 Ill.App. 3d 370, 373 (1st Dist. 2002)(third party beneficiary doctrine applies to arbitration agreements). Here, TNT seeks the benefits of the Master Agreement as a third-party beneficiary–it would not have standing to pursue those benefits otherwise. Bochese v. Town of Ponce Inlet, 405 F.3d 964, 982 (11th Cir. 2005)(discussing legal inquiries relevant to determining third-party beneficiary status). Trelleborg cites no cases to support its contention that it is owed the benefits of the agreement while remaining free of its obligations, nor has the Court found any in its own research.

## IV.  PUBLIC POLICY

TNT argues that public policy weighs in favor of handling all claims in one proceeding rather than splintering them among different courts and locations.  However, the case cited by TNT directly contradicts this argument:

> [W]e decline to endorse [the district court's] suggestion that arbitration is not appropriate in this case because it would inefficiently result in bifurcated proceedings.  If otherwise required, arbitration must be ordered "even where the result would be the possibly inefficient maintenance of separate proceedings in different forums."

<u>Telecom Italia, SPA v. Wholesale Telecom Corp.</u>, 248 F.3d 1109, 1117 (11th Cir. 2001), *quoting* <u>Dean Witter Reynolds v. Byrd</u>, 470 U.S. 213, 217 (1985).  Therefore, the court cannot ignore the Master Agreement's arbitration clause for the sake of judicial economy.

## V.  WAIVER

TNT and Trelleborg maintain, without citation, that DeKeyser waived its right to arbitration when Dekeyser's insurer, Great West Casualty Company, filed a complaint for declaratory judgment in the Northern District of Illinois. Great West is apparently defending DeKeyser in this action under a reservation of rights, while filing its declaratory judgment in the Northern District of Illinois.  Great West seeks a declaration that its policy does not

cover the claims against DeKeyser nor the Plaintiff's claims against TNT and Trelleborg.[6]  (d/e 42, p. 8).

Trelleborg posits that "[t]he combined effect of Great West's efforts *sub nomine* DeKeyser in sending the indemnification and insurance issues to Florida for arbitration, while at the same time seeking adjudications on those issues in its own name in the Northern District, is to frustrate and defer the third party plaintiffs' recourse in the present action."  (d/e 42, p. 9). Trelleborg believes Great West's conduct "amounts to a waiver of its attempt in the name of DeKeyser to compel arbitration of the issues . . ."

This waiver argument is apparently based on equating the actions of Great West with DeKeyser, and equating Great West's declaratory judgment action with the adjudication of the third-party breach of contract claims.  These equations do not compute.  The Court does not understand how Great West's declaratory judgment action amounts to a waiver of DeKeyser's right to arbitrate, or is even contradictory to arbitrating the contract claims.  The fate of Great West's declaratory judgment may (or may not) ultimately have some effect on the arbitration proceedings, but it

---

[6]TNT adopts Trelleborg's argument on waiver.  (d/e 43, p.7).  It appears that an order transferring the declaratory judgment action to the Central District of Illinois was entered on October 31, 2005.  Great West Casualty Co. v. DeKeyser Express, Inc., 05-2681 (N.D. Ill., Judge Nolan).

has no effect on DeKeyser's right to seek arbitration. The interests of Great West and DeKeyser are adverse in the declaratory judgment action–Great West wants a declaration that it owes no coverage.[7] In any event, Great West cannot waive DeKeyser's rights.

## V.    PROCEDURAL DISPOSITION

Having addressed the parties' arguments and concluded that the breach of contract claims are arbitrable, the Court must still address what to do with them. DeKeyser asks for dismissal with prejudice under Fed. R. Civ. P. 12(b)(1)(lack of subject matter jurisdiction), or, in the alternative, asks that its motion be construed as a motion to compel arbitration and stay the arbitrable claims.[8]  (d/e 60, pp. 4-5).

Compelling arbitration is not an option. The Master Agreement specifies that the arbitration must be in Jacksonville, Florida, and "the Federal Arbitration Act forbids the district court to compel arbitration outside the confines of the district". Continental Casualty Co. v. American Nat'l Ins.

---

[7] That the parties' interests may align for some issues and not others is standard fare in litigation. For example, all the defendants and third party defendants share the same interest in defeating Plaintiff's tort claim. They part ways on who pays if Plaintiff succeeds.

[8] DeKeyster originally moved to dismiss under 735 ILCS 2-619, but then corrected that cite to Fed. R. Civ. P. 12(b)(1), lack of subject matter jurisdiction.  (d/e 52, p.1).

Co., 417 F.3d 727, 735 (7th Cir. 2005)(affirming district court's dismissal of arbitrable claims on ground of improper venue); Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Lauer, 49 F.3d 323, 327-28 (7th Cir. 1995)("[T]his Circuit has concluded that where the arbitration agreement contains a forum selection clause, only the district court *in that forum* can issue a § 4 order compelling arbitration.")(emphasis in original).

 Since arbitration cannot be ordered, the options are to dismiss or stay. No party has applied for a stay under 9 U.S.C. § 3. DeKeyser's request to compel arbitration and stay the claims cannot fairly be construed as a request for a stay under 9 U.S.C. § 3. The request is based on its belief that the Illinois district court can order the arbitration, which it cannot. Defendant TNT cites 9 U.S.C. § 3, but only in support of its argument that dismissal is inappropriate unless the entire case is dismissed. The Court hesitates to presume a stay is desired or appropriate without a clear motion and thorough briefing, particularly in light of Continental, *see discussion infra*. The issue is not without some complexity. Given that the court cannot order arbitration or decide the contract claims, it is not clear what purpose a stay would serve. Additionally, 9 U.S.C. §3 directs a stay of the trial of the "action": what that means in this case has not been addressed.

With no application for a stay before the court, dismissal is the lone remaining option. However, the Court believes dismissal is better based on Fed. R. Civ. P. 12(b)(3)(improper venue) than lack of subject matter jurisdiction under 12(b)(1). Continental Casualty Co. v. American Nat'l Ins. Co., 417 F.3d 727, 735 (7th Cir. 2005).[9] In Continental, the parties debated on appeal whether claims subject to arbitration had been dismissed under Fed. R. Civ. P. 12(b)(6)(failure to state a claim) or 12(b)(1)(lack of subject matter jurisdiction). The Seventh Circuit recounted the legal split of authority on that question, ultimately declining to answer it and concluding instead that the district court had dismissed for improper venue under 12(b)(3):

> This approach makes eminent sense both in terms of the actual substance of the district court's action and in terms of our precedent. The district court ultimately dismissed this case because the forum selection clauses in the Quota Share Contract and in the Participation Agreement required arbitration in other districts. We have held dismissal under these circumstances to be appropriate, *see Merrill Lynch, 49 F.3d at 328; see also Mgmt. Recruiters Int'l, Inc. v. Bloor, 129 F.3d 851, 854 (6th Cir.1997)*, and, when the question has arisen, we have held that such dismissal properly is requested under Rule 12(b)(3), *see Frietsch v. Refco, Inc., 56 F.3d 825, 830 (7th Cir.1995)*.

---

[9]Continental, was decided on August 5, 2005, after briefing was complete.

As in <u>Continental</u>, the forum selection clause in the Master Agreement requires arbitration in a different district–Jacksonville, Florida. Illinois district courts are therefore an improper venue for both the contract claims and a petition to order arbitration under 9 U.S.C. § 4.

Though DeKeyser grounds its motion on 12(b)(1), its argument fits under 12(b)(3) as well. DeKeyser has argued from the beginning that the contract claims belong before an arbitrator in Florida, not a district court in Illinois. The Court accordingly believes dismissal under 12(b)(3) is properly considered and is recommended herein. See <u>Metropolitan Life Ins. Co. V. O'Malley</u>, 392 F.Supp.2d 1042 (N.D. Ill. 2005, Norgle, J.)(dismissing Complaint sua sponte under 12(b)(3) where claims subject to arbitration); but <u>cf</u>. Fed. R. Civ. P. 12(h)(1)(defense of improper venue waived if omitted from Rule 12 motion). This avoids entering the fray on whether 12(b)(1) is an appropriate vehicle for dismissal and makes "eminent sense" as described by the Seventh Circuit in <u>Continental</u>.[10] If the parties believe a

---

[10] The Seventh Circuit in <u>Continental</u> stated that, "We have noted that the proper course of action when a party seeks to invoke and arbitration clause is to stay the proceedings pending arbitration [under 9 U.S.C. Section 3] rather than to dismiss outright . . ." 417 F.3d at 732 n.7. However, the case cited in support, <u>Tice v. American Airline, Inc.</u>, 288 F.3d 313, 318 (7th Cir. 2002) involved a federal claim which hinged on the determination of an arbitrable question. Thus, it made sense to stay the federal claim until the arbitration answered the question. It is not clear if it makes as much sense here, and, in any event, no motion to stay is before the court.

stay of the contract claims under 9 U.S.C. § 3 is more appropriate, they may properly move for a stay when filing their objections to this Report and Recommendation.

WHEREFORE, the Court RECOMMENDS that Defendant's Motion to Dismiss (d/e 39) be granted to the extent it seeks dismissal of the breach of contract claims in the third party complaints, but recommends the dismissal be based on improper venue under Fed. R. Civ. P. 12(b)(3) rather than lack of jurisdiction under Fed. R. Civ. P. 12(b)(1).  Accordingly, the Court recommends the dismissal pursuant to Fed. R. Civ. P. 12(b)(3) of the following claims:  Counts III and IV of TNT's Amended Third Party Complaint (d/e 50); and, Counts II and III of Trelleborg's Amended Third Party Complaint (d/e 49).

Any objections to this Report and Recommendation must be filed in writing with the Clerk of the Court within ten working days after service of a copy of this Report and Recommendation. <u>See</u> 28 U.S.C. § 636(b)(1).  Failure to timely object will constitute a waiver of objections on appeal. <u>Video Views, Inc. v. Studio 21, Ltd.</u>, 797 F.2d 538, 539 (7th Cir. 1986).  See also Local Rule 72.2.

ENTER:    November 28, 2005

s/ Byron G. Cudmore
_____
BYRON G. CUDMORE
UNITED STATES MAGISTRATE JUDGE