UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS
PEORIA DIVISION

| | |
|---|---|
| LOLA CAMP,<br><br>    Plaintiff,<br><br>    v.<br><br>TNT LOGISTICS NORTH AMERICA,<br>INC., and TRELLEBORG YSH, INC.,<br><br>    Defendants.<br>--------------------------------<br>TNT LOGISTICS NORTH<br>AMERICA, INC.,<br><br>    Third-party Plaintiff,<br><br>    v.<br><br>DeKEYSER EXPRESS, INC.,<br><br>    Third-party Defendant.<br>--------------------------------<br>TRELLEBORG YSH, INC.,<br><br>    Third-party Plaintiff,<br><br>    v.<br><br>DeKEYSER EXPRESS, INC.,<br><br>    Third-party Defendant. | Case No. 04-1358 |

## ORDER

Before the Court is Plaintiff Lola Camp's Motion to Bar Limitation of Contribution [Doc. #77]; and Third-party Defendant DeKeyser Express, Inc.'s Response [Doc. #82]. For the reasons that follow, Plaintiff's Motion will be DENIED for lack of standing.

## I.
## Background

On or about August 31, 2004, Plaintiff Lola Camp ("Camp") filed a negligence action against Defendants/Third-Party Plaintiffs TNT Logistics North America, Inc. ("TNT") and Trelleborg YSH, Inc. ("Trelleborg").  In her complaint, Camp alleged that she suffered various injuries as a result of the negligent acts of TNT and Trelleborg in the scheduling, staffing, and allowing of unsecured loading and transportation of goods.

TNT and Trelleborg, in turn, have filed amended third-party complaints against DeKeyser Express Inc. ("DeKeyser") asserting breach of contract claims for failure to defend, indemnify, and procure insurance pursuant to a Master Agreement for Transportation Services ("Master Agreement"), and contributory negligence.  The Master Agreement was entered into and signed by both DeKeyser and TNT's predecessor, see [Doc. #77, Ex. 2], with Trelleborg being an intended third-party beneficiary to the agreement, see [Doc. #76, pg. 9].  Camp, though not a direct party to either the Master Agreement or the third-party claims against DeKeyser, has filed this Motion to Bar Limitation of Contribution against DeKeyser.

Camp alleges that at the time of the incident that led to her injuries, she was employed by Transport Leasing/Contract Inc. ("TLC") and providing services and work on behalf of and for the benefit of DeKeyser.  Camp claims that this arrangement made her a "leased employee" working for DeKeyser.  Camp further claims that

in such a situation, DeKeyser had agreed to provide worker's compensation coverage for employees leased from TLC.  See [Doc. #77, Ex. 1].  As a result, Camp filed claims against both TLC (her direct employer) and DeKeyser (her leasing employer) for benefits under the Illinois Worker's Compensation Act, 820 Ill. Comp. Stat. Ann. 305/1 et seq. (West 2000).  See [Doc. #90, Ex. A].

Camp now files the present motion, seeking to bar DeKeyser from asserting that its potential liability for contributory negligence under the third-party claims filed by TNT and Trelleborg is limited to the amount paid in worker's compensation benefits to Camp.  Camp asserts that DeKeyser, in the Master Agreement with TNT, waived its right to have its contribution liability limited, instead retaining full liability for its own negligence.

## II.
## Analysis

Before any determination can be made on the merits of Camp's Motion to Bar Limitation of Contribution, which is in essence seeking a declaratory judgment, the Court must first determine whether she has standing to enforce a provision of the Master Agreement.  To have standing, "a plaintiff must allege a direct injury to [her] rights and not merely that [she] will suffer in some indefinite way."  White Hen Pantry, Inc. v. Rak Woo Cha, 214 Ill. App. 3d 627, 635 (1st Dist. 1991).  In order to enforce rights under a contract, a plaintiff must be a party to the contract, in privity with a party to the contract, or an intended third-

partybeneficiary to the contract.  Id. at 635-36.

The contract at issue is the Master Agreement between DeKeyser and CTI -- TNT's predecessor.  A provision of the Master Agreement provides that DeKeyser is to indemnify TNT and Trelleborg (the intended third-party beneficiary to the agreement) against "[a]ny claim for personal injury of [DeKeyser's] employees related directly or indirectly to the provision of Services hereunder including but not limited to worker's compensation benefits . . ." [Doc. #77, Ex. 2, ¶ 8.1(d)].

The Illinois Worker's Compensation Act, 820 Ill. Comp. Stat. Ann. 305/1 *et seq*. (West 2000), "contemplates a trade off between an employer and an employee in which the employee relinquishes his or her right to recover damages for work-related injuries under a common law negligence theory, while the employer forgoes common law defenses in exchange for liability that is fixed according to a statutory scheme."  Braye v. Archer-Daniels-Midland Co., 175 Ill. 2d 201, 209 (1997).  As a result, an employer who pays out worker's compensation benefits has a defense against any tort action that his employee may directly assert against him.  Unzicker v. Kraft Food Ingredients Corp., 203 Ill. 2d 64, 75-76, 84 (2002).

On the other hand, under the Illinois Joint Tortfeasor Contribution Act, 740 Ill. Comp. Stat. Ann. 100/0.01 *et seq*. (West 2000), a third party tortfeasor may nevertheless seek contribution from a negligent employer despite the employers' limited liability to the employee under the Worker's Compensation Act.  Braye, 175

4

Ill. 2d at 207-10; Kotecki v. Cyclops Welding Corp., 146 Ill. 2d 155, 158-60 (1991); Doyle v. Rhodes, 101 Ill. 2d 1, 14 (1984). The negligent employer's liability for contribution to the third-party, however, is limited to the amount of worker's compensation benefits paid out or owed to the employee. Kotecki, 146 Ill. 2d at 164-65. But under Illinois law, this statutory limitation of liability can be contractually waived. See Braye, 175 Ill. 2d at 207-12.

In addition, "[s]ection 5(b) of the Worker's Compensation Act requires an employee who has received worker's compensation benefits to reimburse the employer for those benefits from any recovery the employee receives from a third party liable for the employee's injuries." Ramsey v. Morrison, 175 Ill. 2d 218, 237 (1997). In essence, "[t]his provision grants the employer a statutory lien on any recovery the employee obtains from a third party, equal to the amount of the worker's compensation benefits paid or owed." Id.

For example, assume that Camp has received $100,000 in worker's compensation benefits from DeKeyser, and that she sues TNT and Trelleborg for $500,000 in damages. TNT and Trelleborg then sue DeKeyser for contribution, and DeKeyser is found to be 50% negligent. Under the Kotecki cap, even though 50% of the judgment would be $250,000, DeKeyser is only liable to contribute $100,000 to TNT and Trelleborg -- the amount in which DeKeyser has paid Camp in worker's compensation benefits. TNT and Trelleborg would then have to pay the other $400,000 of the judgment to Camp. Upon

5

receiving the judgment from TNT and Trelleborg, Camp would then have to reimburse DeKeyser the $100,000 which she received in worker's compensation benefits. In this manner, Camp only nets $400,000, and DeKeyser is only effectively responsible for the amount in which it has paid out in worker's compensation benefits -- despite being 50% negligent for Camp's injuries.

Now assume that the <u>Kotecki</u> cap has been waived, as Camp is asking the Court to do in the present motion. Using the same circumstances, if DeKeyser is found to be 50% negligent, it would be required to contribute the full $250,000 to TNT and Trelleborg. Camp, however, would still receive the same $500,000 judgment, with the only difference being that a larger percentage of the money came from DeKeyser. She would also still be forced to reimburse DeKeyser the same $100,000 that they paid out in worker's compensation benefits. In this situation, Camp still nets only $400,000, but DeKeyser is now on the hook for more than what it has paid out in worker's compensation benefits.

Therefore, the only difference to Camp under this scenario would come if either TNT or Trelleborg were unable to pay their full share of the judgment. That is, if the <u>Kotecki</u> cap is in place, even if TNT or Trelleborg (or both) were found to be judgment-proof, DeKeyser could not be forced to contribute more than $100,000. However, if the <u>Kotecki</u> cap is waived, then DeKeyser would be joint and severally liable for the full amount of the $500,000 judgment. In essence, Camp has filed the instant

motion simply as an attempt to ensure herself that there will be more money available to pay the potential judgment in the event that either TNT or Trelleborg (or both) are unable to pay their full share.

However, in order to enforce a provision of the Master Agreement, as stated above, Camp must either be a party to the contract, in privity with a party to the contract, or an intended third-party beneficiary to the contract. See White Hen Pantry, 214 Ill. App. 3d at 635-36. She clearly does not fall within the first two categories and, therefore, her standing to bring the present Motion is based on her being an intended third-party beneficiary to the Master Agreement. But to be an intended third-party beneficiary, Camp "must clearly show that such benefit was not purely incidental but that the contract was made for [her] direct benefit." Id. In other words, "[o]nly third parties who are direct beneficiaries have rights under a contract." 155 Harbor Drive Condo. Ass'n v. Harbor Point, Inc., 209 Ill. App. 3d 631, 646 (1st Dist. 1991).

Here, Camp has made no argument as to why she should be deemed a direct, intended third-party beneficiary to the Master Agreement, or any argument whatsoever as to why she would have standing to raise the contractual rights of another party in the instant matter.

"Given our adversarial system of litigation, it is not the role of this [C]ourt to research and construct the legal arguments

open to parties, especially when they are represented by counsel." United States v. Amerson, 185 F.3d 676, 689 (7th Cir. 1999) (internal quotations omitted). Courts are entitled to assistance from counsel, and an invitation to search without guidance is no more useful than a litigant's request to a district court at the summary judgment stage to paw through the assembled discovery material. Thus, "[l]itigants may not pretend that the law favors their view and impose on the [C]ourt or their adversaries the burden of research to uncover the basic rule." Mars Steel Corp. v. Cont'l Bank N.A., 880 F.2d 928, 938 (7th Cir. 1989) (internal quotations omitted). "Judges are not like pigs, hunting for truffles buried in briefs" or the case law. United States v. Dunkel, 927 F.2d 955, 956 (7th Cir. 1991).

In any event, it is clear to this Court that the language in the Master Agreement allegedly waiving the Kotecki cap was intended to directly benefit TNT and Trelleborg, not Camp. If Dekeyser indeed waived its cap on liability, the direct benefit of such a waiver would be that TNT and Trelleborg could recover a larger percentage of contribution from DeKeyser if indeed found liable in the underlying suit. Therefore, the only benefit to Camp if Dekeyser's limitation on liability is in fact waived, is that it ensures her a deeper pocket from which to collect in the underlying law suit if TNT or Trelleborg are unable to pay. This at best makes her an incidental beneficiary to the Master Agreement and, therefore, wholly insufficient to establish standing on behalf of Camp to bring the instant motion.

## III.
## Conclusion

Absent any authority to support why she should be deemed a direct, intended third-party beneficiary to the Master Agreement, Camp has failed to show that she has standing to bring the instant motion.

IT IS THEREFORE ORDERED that Plaintiff's Motion to Bar Limitation of Contribution by third-party Defendant DeKeyser, is DENIED for lack of standing.

ENTERED this  3rd  day of August, 2006.

                                                 /s/ Joe B. McDade   
                                                 JOE BILLY McDADE  
                                     United States District Judge